UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALLISON MACLEAN, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 09-5507 |
| v. | : | MEMORANDUM OPINION & ORDER |
| STUART WEITZMAN SHOES, n/a STUART WEITZMAN, | : | |
| Defendant. | : | |

This matter is before the Court on a motion for summary judgment filed by Defendant Stuart Weitzman Retail Stores, LLC (apparently improperly plead as "Stuart Weitzman Shoes, n/a Stuart Weitzman"). For the reasons set forth below, the motion will be granted.

Background

Plaintiff Allison Maclean originally filed the Complaint in this matter on August 21, 2009 in the Superior Court of New Jersey, Law Division, Atlantic County. She sued her former employer for discriminatory demotion (Count I) and discriminatory discharge (Count II) in violation of the New Jersey Law Against Discrimination ("NJLAD"). Essentially, Plaintiff alleged that she had been employed by Defendant in its Atlantic City store since March 13, 2007, but her hours were cut down, rendering her a part-time employee, in March of 2009. Plaintiff's manager, Georgina Rendon-Perez ("Rendon"), who made the decision of whose hours to reduce, was Hispanic, as was the only other full-time clerk working at the store, Martha Ramos ("Ramos"). At that time, Rendon allegedly told Plaintiff that because Plaintiff's parents were white, and she was American born and middle class, she would be able to better handle the loss of hours and benefits than would Ramos, who was not born in America and who Rendon said "needed the benefits more." (Compl., ¶ 12.) Ramos remained full-time.

On or about June 17, 2009, Plaintiff requested the July 4th holiday off because her boyfriend would be spending his first Fourth of July home from Iraq, where he spent all of 2008.  Rendon denied Plaintiff's request, saying "I don't care if he just got off the toilet." (Compl., ¶ 18.)  Although she was full-time, Ramos was given the time off.

When Plaintiff told her boyfriend about the conversation, he immediately called corporate headquarters to convey the insulting remark.[1]  An individual believed to be a regional manager, Philippa Wilkes ("Wilkes"), contacted Rendon to discuss the call.  Immediately afterwards, Rendon "emerged from her office, screaming in vitriolic and violent fashion at the Plaintiff, in the presence of customers, calling the Plaintiff a 'whore' and a 'slut' and other similar language." (Compl., ¶ 25.)

Plaintiff left the store to call Wilkes on her cell phone.  She conveyed to Wilkes the names Rendon had called her.  Wilkes allegedly told Plaintiff that Rendon would never have said those words, and asked Plaintiff to repeat them. (Compl., ¶ 27-29.)  When Plaintiff repeated the words Rendon used, Wilkes told Plaintiff she was being "disrespectful" by using such language. (Compl., ¶ 30.)  Wilkes then accused Plaintiff of abandoning her job by leaving the store to call her, despite that Rendon had given Plaintiff permission to do so. (Compl., ¶ 31.)  The next day, Plaintiff was terminated.

Plaintiff's Complaint attributed the termination to discrimination based on her ethnicity, national origin, and/or race, the fact that she complained about "sexual misconduct" (the names she was called by Rendon), the fact that she had complained about being discriminated against in awarding holiday time off, and the fact that she

---

[1] Plaintiff's boyfriend told the person on the line that he personally heard the remark, although in fact he did not.

2

complained about dissatisfaction with her original demotion, which she believes was based on ethnicity, national origin, and/or race in violation of the NJLAD. (Compl., ¶ 36, 13.)

Defendant removed the matter to this Court on October 28, 2009, citing diversity jurisdiction pursuant to 28 U.S.C. § 1332. It has now moved for summary judgment on the entirety of Plaintiff's Complaint.

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986)); accord Fed. R. Civ. P. 56(a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c) (1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

  Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256–57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

<u>Discrimination in Violation of the NJLAD</u>

The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose. <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 525-27 (3d Cir. 1992). The NJLAD specifically prohibits employment discrimination based on national origin. N.J. Stat. Ann. § 10:5-12(a).

Typically, a *prima facie* case of unlawful discrimination in the workplace under the NJLAD is established when a plaintiff demonstrates by a preponderance of the evidence that he or she (1) belongs to a protected class; (2) was performing a job at a level that met the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions. <u>Zive v. Stanley Roberts, Inc.</u>, 867 A.2d 1133 (N.J. 2005). When the plaintiff is not a member of a protected class, however, the plaintiff "must substantiate . . . that the background circumstances support the suspicion that the defendant is the unusual employer who discriminates against the majority." <u>Erickson v. Marsh & McLennan, Co.</u>, 569 A.2d 793, 799 (N.J. 1990) (internal quotations and citations omitted). This is because "when a complainant is a member of the majority and not representative of persons usually discriminated against in the work place, discrimination directed against that person is 'unusual.'" <u>Id.</u> To show background circumstances sufficient to warrant an inference of discrimination, an employee can either (1) establish that she was better qualified for the position than the minority candidate selected, or (2) establish that the employer had some "reason or inclination to discriminate against the majority class." <u>Bergen Comm'l Bank v. Sisler</u>, 723 A.2d 944, 957 (N.J. 1999) (citation omitted).

To advance a *prima facie* case of retaliation under the NJLAD, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. Abramson v. William Paterson Coll., 260 F.3d 265, 286 (3d Cir. 2001).

Courts employ the same Title VII evidentiary framework and standard of review when analyzing claims under the NJLAD. Iadimarco v. Runyon, 190 F.3d 151, 164 (3d Cir. 1999). Thus, once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). However, "[a]n employer cannot successfully defend a hiring decision against a Title VII challenge merely by asserting that the responsible hiring official selected the man or woman who was 'the right person for the job.'" Iadimarco, 190 F.3d at 166.

Once the employer meets this "relatively light burden," "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." Fuentes, 32 F.3d at 763. A plaintiff may establish pretext directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered

6

reason is unworthy of credence. Ezold, 983 F.2d at 523. One of these is sufficient; the employee does not have to prove both that the explanation is implausible and that discrimination was a motivating factor. Waldron v. SL Indus., Inc., 56 F.3d 491, 494-95 (3d Cir. 1995). On the other hand, the employee cannot carry his burden by showing that the employer's decision was "wrong or mistaken." Fuentes, 32 F.3d at 765. Rather, he must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them unworthy of credence," id. (citing Ezold, 983 F.2d at 531), "and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons,'" id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)).

A plaintiff's subjective belief that his qualifications should have been accorded more weight is not probative of pretext. See, e.g., Valdes v. Union City Bd. Of Ed., 186 Fed. Appx. 319, 323 (3d Cir. 2006). An employer is entitled to evaluate which qualifications best fit its needs in selecting a candidate. See Sarmiento v. Montclair State Univ., 513 F. Supp. 2d 72, 89 (D.N.J. 2007) (finding legitimate reasons for not selecting the more experienced candidate because it was up to the university to evaluate which qualifications best fit departmental needs). That is, a plaintiff's disagreement with assessment criteria and belief that he or she is better qualified for the position is not sufficient to avoid summary judgment. Langley v. Merck & Co., 186 Fed. Appx. 258, 261 (3d Cir. 2006).

Analysis

Here, Plaintiff has failed to satisfy the first prong in establishing a *prima facie* case for her claim of discriminatory demotion because Plaintiff has not demonstrated that Defendant is the unusual employer that discriminates against the majority. The record evidence demonstrates that Plaintiff was not better qualified to retain a full-time position than the minority candidate selected, and further, it appears that she was not meeting Defendant's legitimate expectations when compared to other sales associates. Sales data in the record reveals that Ramos performed better than Plaintiff, and in fact, above average for the Atlantic City store, while Plaintiff's numbers were below store average. Approximately three months before Plaintiff was made part-time, she signed off on a performance evaluation, acknowledging that she needed to improve her productivity by writing, "I agree with all the marks and will work harder to bring up my sales."

While Plaintiff has argued "that there are disputed issues of material fact in this case which cannot be resolved as a matter of law and must instead be decided by a jury," (Pl. Br., p. 12), she does not point to competent evidence in support of that argument. She cites to Staub v. Proctor Hospital, 131 S. Ct. 1186 (2011), to argue that because Rendon made disparaging remarks about Americans, Defendant was inclined to discriminate against that majority class, and an issue of fact remains as to whether Rendon's discriminatory motive affected the accuracy of Plaintiff's performance evaluation.[2] Such argument is misplaced. In fact, the executives who decided that

---

[2]Regarding Plaintiff's argument that Ramos was credited for sales made by Plaintiff, she does not point to any instance prior to her assuming part-time status

8

Plaintiff would be demoted to part-time work made personnel decisions nationwide in an effort to reorganize for economic efficiency reasons based on "hard numbers," and were themselves Caucasian and American-born.

Next, insofar as Plaintiff intended to claim that she was terminated due to her national origin, summary judgment will be granted on that claim because, again, she has failed to show that Defendant is the unusual employer that discriminates against the majority. Further, she has presented no evidence or suggestion that the reasons for the termination were discriminatory. "Nothing in the record plausibly suggests that the proffered reasons for [Plaintiff's termination] were . . . actually motivated by discriminatory animus." Snik v. Verizon Wireless, 160 Fed. Appx. 191, 194 (3d Cir. 2005). As such, even if the Court were to assume that Plaintiff could make out a *prima facie* case of unlawful termination, she has failed to satisfy her burden to demonstrate that the legitimate reasons for termination offered by the Defendant are merely a pretext for discrimination.

Similarly, Plaintiff has failed to substantiate her claim of retaliatory discharge. The record is clear that she was not terminated for complaining about either sexual comments made by her supervisor or not being awarded holiday time off, and she was not terminated for complaining about being demoted to part-time three months prior. Rather, the cause of Plaintiff's termination was (1) that she left the store during her shift in violation of company policy, after having been warned that doing so was

---

where she did not properly get credit for a sale, or where Ramos improperly received such credit. Further, when Rendon completed Plaintiff's performance evaluation, Plaintiff indicated that the two had a fine relationship.

unacceptable, and (2) that Defendant made a determination that Plaintiff was complicit in a false "customer complaint" actually lodged by her then-fiancé. Thus, there is no causal link between any of Plaintiff's complaints and her termination.

Conclusion

For these reasons,

IT IS ORDERED this 29th day of March, 2012 that Defendant's motion for summary judgment is hereby GRANTED.

      /s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
      U.S.D.J.